UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **SUNAE VILLAVASO and SUNAE VILLAVASO Individually** | CIVIL ACTION<br><br>NO.   16-14932-EEF-DMD |
| **VERSUS** | |
| **EDUCATION MANAGEMENT, INC.,** d/b/a **BLUE CLIFF COLLEGE** | |

## AMENDED AND SUPERSEDING COMPLAINT

NOW COME Complainants, the United States of America, *ex relator* Sunae Villavaso, and Sunae Villavaso Individually, who asserts the following amended and superseding complaint in accordance with Fed. R. Civ. P. 15(a)(1)(B):

### Parties

1.

Relator/Plaintiff Sunae Villavaso is a person of the full age of majority domiciled in the State of Louisiana, Parish of Orleans.

2.

Defendant Education Management, Inc., doing business as Blue Cliff College, ("Blue Cliff"), is a Louisiana corporation domiciled at 11744 Haymarket Ave., Ste. D, Baton Rouge, LA 70816.

## Jurisdiction and Venue

3.

Jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C § 1331 and 31 U.S.C § 3732(a) inasmuch as this matter arises under the False Claims Act, 31 U.S.C. § 3729, *et seq.*

4.

Venue is proper in this Honorable Court in part pursuant to 28 U.S.C §1391 and 31 U.S.C § 3732(a) inasmuch as a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of Louisiana and Blue Cliff transacts business within the Eastern District of Louisiana.

## Factual Background

5.

Blue Cliff is a profit-making career college owned and operated by Education Management, Inc., with nine campuses in Louisiana, Mississippi, and Arkansas.

6.

Blue Cliff's business model depends upon its and its students' receipt of federal funds under Title IV of the Higher Education Act of 1965.

6A.

Blue Cliff's business model depends upon students being admitted, starting classes, and attending for at least five days in order for Blue Cliff to received federally-funded tuition payments. The students' education, graduation, employment, or employability, are irrelevant to Blue Cliff's core business model.

7.

Blue Cliff profits from Federal Pell Grants, the William D. Ford Federal Direct Loan Program, William D. Ford Federal Direct Parent (PLUS) Loans, and Federal Direct Consolidation Loans.

8.

Over 90% of Blue Cliff students receive federal financial aid and Blue Cliff instructs students to take out extra loans in order to receive a refund of federal funds.

9.

Blue Cliff also pays Penn Foster High School, an on-line institution operated by Penn Foster, Inc. of Pennsylvania, to provide high school diplomas for otherwise-unqualified students enrolled in Blue Cliff, in order to access federal student aid funds.

10.

Penn Foster High School students, including student S.R., are routinely enrolled in Blue Cliff before graduating Penn Foster. The students are then graduated by Penn Foster a few days after the start has been called by Blue Cliff (that is, after all students then on the roll will be billed).

10A.

Blue Cliff, through its CEO Reginald Moore, certifies to the Department of Education, including through a Program Participation Agreement, that it complies with all Title IV requirements and federally imposed conditions of payment and of program participation.

10B.

The certification by Blue Cliff and/or Moore that Blue Cliff was in compliance with Title IV was and is knowingly false.

11.

On March 24, 2014, Blue Cliff hired Villavaso as the Assistant Director of Education for Blue Cliff's Metairie, Louisiana, campus.

12.

Villavaso has a Masters Degree in Counseling and was well qualified for this position.

13.

Blue Cliff promoted Villavaso to Director of Education in June 2014.

14.

In addition to her rapid promotion, Blue Cliff awarded Villavaso the "Academic Achievement Award" in 2014 and the "Retention Award" in 2015.

15.

On November 19, 2014, federal Department of Education investigators came to Blue Cliff to inform the administrators of a fraudulent Proof of Graduation (or "POG") scheme that was active in the city.

16.

Specifically, the investigators advised that fraudulent diplomas were being created and used to gain admission to various career colleges, including Blue Cliff.

17.

In response to this information, Villavaso, as Director of Education, began to scrutinize student diplomas prior to the start of each program.

18.

Upon discovering evidence of fraudulent diplomas, Villavaso voiced her concerns to the Vice President of Academics, Joanitt Montano, that some of Blue Cliff's students had been admitted using fraudulent diplomas.

19.

Blue Cliff did nothing.

20.

In Spring 2015, Villavaso persisted in her investigation of students who were applying to programs using fraudulent diplomas, and she reported particular students to the Vice President of Academics, Joanitt Montano, and the CEO of Blue Cliff, Reginald Moore.

21.

Blue Cliff did not appreciate Villavaso's due diligence.

22.

For example, Montano informed Villavaso that she "must understand that this is a business."

23.

Further, Moore accused Villavaso of working against admissions and not wanting Blue Cliff to succeed financially.

24.

Despite Blue Cliff s resistance to addressing issues of fraud, which may have resulted in the diminution of student enrollment, Villavaso persisted in her efforts to be assured that only students with valid POGs would be admitted.

25.

Nevertheless, Blue Cliff continued to accept invalid POGs, including diplomas that were obviously fraudulent.

26.

Villavaso also brought to the attention of Blue Cliff administration, including Campus Director Douglas Robertson, the fact that multiple students were appearing on classroom attendance rosters, despite the fact that the students were not in attendance, and that Blue Cliff staff were responsible for these students appearing on rosters in an attempt to collect funding for the student's participation in Blue Cliff programs.

27.

Villavaso also discovered incidents of Blue Cliff administration ignoring student requests to resign from the program - within the five-day period allowed for resignations without financial obligation - that were ignored by Blue Cliff.

28.

Blue Cliff routinely ignored students' timely requests to resign from programs without costs in order to continue billing the students and to receive federal funding to cover the students' program costs.

29.

Blue Cliff, including CEO Reginald Moore and Campus Director Douglas Robertson, dismissed Villavaso's attempts to address and remedy these issues as well.

30.

Instead, Blue Cliff, though Robertson, terminated Villavaso's employment on September 4, 2015.

31.

Blue Cliff Campus Director Douglas Robertson stated that Blue Cliff was firing Villavaso because Blue Cliff would be "going in a different direction."

32.

In truth, Blue Cliff fired Villavaso in retaliation for her discovery and attempts to remedy Blue Cliff's false claims, fraud upon the United States, and other illegal practices.

**Claims on behalf of the United States**

33.

Villavaso re-avers and re-alleges the preceding allegations of this Complaint.

34.

Based upon Villavaso's personal knowledge gained during her employment between March 2014 and September 2015, information available to her thus far, and her reasonable belief of such information, Villavaso alleges that Blue Cliff engages in a systematic scheme to defraud the United States by receiving Title IV money while violating conditions of Title IV payments, in violation of 31 U.S.C. § 329(a)(1).

35.

Blue Cliff knowingly violates conditions of payment when it enrolls students that Blue Cliff knows are not equipped, prepared, or eligible to successfully complete Blue Cliff's course of study, or to become employed and repay their federal financial loans.

36.

In particular, student Y.T. had language and other issues that would, and did, cause her to ultimately drop classes. Blue Cliff enrolled Y.T. anyway.

37.

A cosmetology student could not read and had to be read to daily by instructor Martha Hawkins.

38.

The same student's reading and math were on a second grade level, and she could not read the word "children." After the student scored a 9 on the Wonderlic test, a Blue Cliff admissions officer re-took the Wonderlic test for the student and ascribed a score of 15 to the student.

39.

Another student, T.W., took the Wonderlic test twice in the span of two hours; first scoring 9 and then scoring 17 after receiving assistance from a Blue Cliff admissions representative.

40.

Blue Cliff knowingly enrolled another non-reader, student C.M., a Penn Foster graduate.

41.

Two other cosmetology students, S.S. and S.S., did not attend classes but Blue Cliff's Senior Director of Admissions Erika Santos forged their signatures on attendance rosters in December 2015.

41A.

During the course of her employment, Villavaso learned the Blue Cliff personnel, including Erika Santos, routinely forged students' names on attendance rosters in order for Blue

Cliff to obtain federal tuition dollars.

42.

Still other students, including student J.J., were pressured by Erika Santos to remain enrolled even after the student expressed desire to withdraw before incurring a financial obligation. The student ultimately dropped the courses.

43.

Blue Cliff also violates conditions of payment by offering promotions and compensation incentives based on the number of students its recruitment representatives can enroll. Thus, Blue Cliff promoted Erika Santos to Senior Director of Admissions/Site Manager, with an increased salary, after Santos met her budgeted goal for six months.

43A.

Throughout Villavaso's employment, Blue Cliff maintained quotas for each course, setting the minimum numbers of students necessary for Blue Cliff to be profitable.

43B.

In order to maintain its quotas, Blue Cliff pays its admissions staff hourly, and disguises its incentive payments for rounding up the required number of students, through extensive overtime payments.

44.

In addition, Blue Cliff enrolls students with criminal records, including several dialysis technician students, including students W.W. and B.B., that had criminal records that would prevent their doing externships even if they graduated from Blue Cliff. Under pressure from Blue Cliff's Campus Director Douglas Robertson, who was aware of the criminal records and aware

that the criminal records would prevent the students from finding employment and repaying their federal loans, Blue Cliff enrolled them anyway.

## Claims on behalf of Sunae Villavaso Individually

45.

Villavaso re-avers and re-alleges the preceding allegations of this Complaint.

46.

At all times material hereto, Villavaso was an employee of Blue Cliff and entitled to protection from retaliation by Blue Cliff pursuant to 31 U.S.C. § 3730(h).

47.

Throughout her employment Villavaso reported to Blue Cliff's officers and employees, both verbally and in writing, the foregoing false claims, fraud upon the United States, and unlawful conduct by Blue Cliff and its officers and employees.

47A.

For example, during a May 18, 2015 meeting, Villavaso raised the issue of fraudulent POGs used by Blue Cliff to enroll students ineligible to received federal student aid. In response to Villavaso's concerns, Campus Director Robertson said, "I would keep my mouth shut if I were you because you are the one [Vice President of Academics] Joa [Montano] is going to come after for this."

47B.

On May 28, 2015, Villavaso reported instances of obviously fraudulent diplomas that were confirmed as fraudulent by the Louisiana Department of Education but that were used anyway by Blue Cliff to enroll students and to obtain federal funds.

47C.

Villavaso reported the fraudulent diplomas to Blue Cliff officers, including Campus Director Douglas Robertson, Vice President of Compliance, DeKenya Douglas, Vice President of Academics Joanitt Montano, and CEO Reginald Moore.

47D.

On June 2, 2015, CEO Reginald Moore instructed Campus Director Robertson, Villavaso, and others to confirm with the students themselves whether they had graduated notwithstanding the fraudulent diplomas. Moore wrote, "Please, please all let's help as many students as we can, let's ALL GET ON SAME TEAM !!"

47E.

On July 24, 2015, Villavaso had a meeting with Vice President of Academics Joanitt Montano regarding Villavaso's repeated reports of fraud that Blue Cliff had ignored. Villavaso asked whether Blue Cliff was requesting that she turn a blind eye and deaf ear to the fraud Blue Cliff was committing against the United States and against its own students. Montano responded, "Keep doing what you are doing. I am not going to jail for Mr. Moore."

47F.

An hour or so after their initial meeting, Montano visited Campus Director Douglas Robertson. Montano then texted Villavaso and asked if Villavaso was available to talk further. Montano returned to Villavaso's office and said, "You have to understand that this is a business." Villavaso responded that she understood that but that she would not sign off on, or be a part of, any fraud or forgery at Blue Cliff.

47G.

On September 2, 2015, Villavaso attended a meeting at Blue Cliff's Clearview campus with, among others, Moore, Montano, Robertson, and Douglas.

47H.

Villavaso again expressed her concern and raised complaints about the ongoing issues of forgeries, fraud, fake diplomas, and Blue Cliff's ongoing fraud against the United States and ongoing exploitation of its students.

47I.

In response to Villavaso's complaints and concerns, Moore said that she was trying to stop Blue Cliff from making money.

47J.

In response to Villavaso's complaints and concerns, Moore told Villavaso that she was to have no more contact with himself or the other Blue Cliff corporate officers based in Baton Rouge.

47K.

In response to Villavaso's complaints and concerns, Moore told Villavaso that from that moment on, Douglas Robertson was to have complete autonomy over Blue Cliff's Clearview campus.

47L.

Two days later, on September 4, 2015, Robertson told Villavaso that she was fired.

48.

Villavaso's discovery and disclosure of the false claims and unlawful conduct by Blue Cliff led to the qui tam action asserted in this Complaint.

49.

As set forth, Villavaso was discharged by Blue Cliff because of her lawful acts in investigating, reporting, and attempting to remedy and stop, the false claims and unlawful conduct by Blue Cliff and its officers and employees.

50.

Villavaso is therefore entitled to all damages and other relief pursuant to 31 U.S.C. § 3730(h)(2), or other applicable law.

**Jury Demand**

51.

Relator/Plaintiff demands a trial by jury for all claims and issues so triable.

**Prayer for Relief**

**WHEREFORE,** Sunae Villavaso, on behalf of the United States and individually, prays that this Complaint be deemed good and sufficient and that after due proceedings are had, judgment be rendered against Education Management, Inc., d/b/a Blue Cliff College, for violations of the False Claims Act, as follows:

(a) In favor of the United States against the Defendant for treble damages to the federal government from the submission of false claims, and the maximum civil penalties for each violation of the False Claims Acts;

(b) In favor of Villavaso as Relator for the maximum amount pursuant to 31 U.S.C. § 3730(d) to include reasonable expenses, attorney's fees, and costs incurred by the Relator;

(c) In favor of Villavaso individually for general and special damages, including the maximum amount pursuant to 31 U.S.C. § 3730(h) to include front pay in lieu of reinstatement,

two times the amount of back pay, interest on back pay, reasonable expenses, attorney's fees, and costs incurred by Villavaso;

   (d) For all costs of the False Claims Act civil action;

   (e) For all interest to the fullest extent allowed by law; and

   (e) In favor of the Relator ·and the United States for all further relief as this court deems just and equitable.

       Respectfully submitted:

       /s/ Kearney S. Loughlin
       KEARNEY S. LOUGHLIN
       La. State Bar No. 26391
       602 Boulder Creek Parkway
       Lafayette, Louisiana 70508
       Telephone: (337) 534-8803
       Facsimile: (337) 628-2161

       And by

       NANAK S. RAI
       La. State Bar No. 22852
       3800 Nashville Avenue
       New Orleans Louisiana 70125
       Telephone: (504) 866-5275
       Facsimile: (504) 861-4032
       **Attorneys for Sunae Villavaso**