UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA *ex rel.* SUNAE VILLAVASO and SUNAE VILLAVASO Individually** | **CIVIL ACTION** <br><br> **NO. 16-14932** |
| **VERSUS** | **SECTION "L" (3)** |
| **EDUCATION MANAGEMENT, INC. d/b/a BLUE CLIFF COLLEGE** | |

### DEFENDANT'S STATEMENT OF UNCONTESTED FACTS

Defendant Education Management, Inc. d/b/a Blue Cliff College ("EMI") submits this statement of uncontested material facts pursuant to Local Rule 56.1. However, EMI stresses that it does not bear the burden of proof at trial on any of Relator-Plaintiff Sunae Villavaso's ("Ms. Villavaso") claims. In this regard, EMI's motion for summary judgment is, in large part, a "no-evidence motion" insomuch as Ms. Villavaso has marshalled no evidence to support her claims in the five plus years since suit was filed.

1. EMI runs for-profit colleges in several locations. (R. Doc. 32, ¶ 5).

2. EMI hired Ms. Villavaso on March 24, 2014, as the Assistant Director of Education for its campus in Metairie, Louisiana. (Ex. 1, Villavaso Dep. Tr. p. 91; R. Doc. 32, ¶ 11).

3. Ms. Villavaso's employment was terminated on September 4, 2015. (Ex. 1, p. 26; R. Doc. 32, ¶ 30).

4. At no point during Ms. Villavaso's employment with EMI did she review any language of Title IV. (Ex. 1, pp. 13-14).

5. Prior to filing her lawsuit, Ms. Villavaso never looked at the Program Participation Agreement that EMI signed to certify compliance with Title IV. (Ex. 1, pp. 250-253).

6. Ms. Villavaso is not aware of any of the provisions contained in the Program Participation Agreement. (Ex. 1, pp. 251, 253-54).

7. When interviewed, Ms. Villavaso was informed that the plan was to promote her to the position of Director of Education ("DOE") because the then-current DOE, Berta Jefferson, was set to move to a corporate position within EMI. (Ex. 1, p. 93).

8. Though Ms. Villavaso had previously worked in the education field for many years, she had never before worked in the for-profit education setting. (Ex. 1, p. 84).

9. The decision to hire Ms. Villavaso was made by Doug Robertson, Campus Director of EMI's Metairie Campus, and Ms. Jefferson, with input from Dr. Joanitt Montano, Vice President of Academics for EMI. (Ex. 1, pp. 87, 89-90).

10. EMI promoted Ms. Villavaso to Director of Education ("DOE") of the Metairie Campus in July 2014 following Ms. Jefferson's transition to the role of Corporate Director of Education. (Ex. 1 pp. 93-95, 164).

11. Ms. Villavaso was issued a Corrective Action on July 20, 2015 due to a number of performance problems. (Ex. 2, Declaration of Douglas Robertson, ¶ 8; Ex. 1 pp. 262-64).

12. Following a meeting with Mr. Moore, Dr. Montano, Mr. Robertson, and Ms. Wallace, the scope of the Corrective Action was narrowed to five items for Ms. Villavaso to improve. (Ex. 1, pp. 262-265; Ex. 2, ¶ 11).

13. Ms. Villavaso accepted responsibility for the deficiencies covered by the revised Corrective Action indicated by her handwritten notes on the form. (Ex. 1, pp. 263-64; Ex. 2, ¶ and Exhibit A attached thereto).

14. Ms. Villavosa's performance did not satisfactorily improve following the issuance of the Corrective Action. (Ex. 2, ¶ 12).

15. As a result, Mr. Robertson consulted with Dr. Montano (Vice President of Academics) and Caroline Wallace, Human Resources Manager, concerning placing Ms. Villavaso on a Performance Improvement Plan ("PIP"). (Ex. 2, ¶ 13).

16. On September 1, 2015, Mr. Robertson presented Ms. Villavaso with the PIP. (Ex. 1, p. 272; Ex. 2, ¶ 13).

17. Ms. Villavaso did not agree with being placed on the PIP or the items contained therein and refused to accept the PIP. (Ex. 2, ¶ 13).

18. Mr. Robertson consulted with Mr. Moore, Dr. Montano, Ms. Jefferson, and Ms. Wallace about how to handle Ms. Villavaso's response to the PIP and continued performance issues. Based on Ms. Villavaso's response and documented performance issues, Mr. Moore, Mr. Robertson, Dr. Montano, and Ms. Jefferson agreed to discharge Ms. Villavaso. (Ex. 2, ¶ 16).

19. The decision to discharge Ms. Villavaso was communicated to Ms. Villavaso by Mr. Robertson. (Ex. 1, p. 265; Ex. 2, ¶¶ 13-14).

20. On September 10, 2015, Ms. Villavaso filed an EEOC charge against EMI in which she declared, <u>under penalty of perjury</u>, that she was "discriminated against in retaliation for complaining about Doug Robertson's [sic] treatment of women in violation of Title VII of the Civil Rights Act of 1964, as amended." (Ex. 1, pp. 27-28).

21. Ms. Villavaso has admitted that she believes she was terminated, at least in part, because Mr. Robertson "has an issue with women who ask questions and are not - - and not afraid to defend themselves." (Ex. 1, p. 29).

22. Ms. Villavaso "[can] not definitively say that [Mr. Moore] signed off on something that was false." (Ex. 1, pp. 252-53).

23. Ms. Villavaso was involved with the reaccreditation of EMI. (Ex. 1, pp. 161-62).

24. During her employment with EMI, Ms. Villavaso did not make any complaints to EMI's accrediting agency regarding any of EMI's practices. (Ex. 1, pp. 161, 255).

25. Ms. Villavaso's written job duties as Director of Education were accurate except she did little managing of expenses, had no real authority over the budget, and did not understand the meaning of "ensures academic freedom." (Ex. 1, pp. 110-11).

26. Ms. Villavaso has no evidence other than her subjective belief that EMI ever submitted any false document to the federal government. (Ex. 1, pp. 253-54)

27. Ms. Villavaso has no personal knowledge of whether any incentive payments were made to EMI staff based solely on the number of students that were recruited to enroll. (Ex. 1, pp. 244-46, 248-49).

28. Ms. Villavaso does not know whether Title IV has specific requirements to validate a "Proof of Graduation" in order for receipt of Title IV funds. (Ex. 1, p. 230).

29. Ms. Villavaso's job responsibilities included verifying that a student's "Proof of Graduation" was valid, *i.e.* that the student had, if required, a valid high school diploma or GED certificate. (Ex. 1, pp. 163, 182).

30. Ms. Villavaso was responsible for tracking students' Satisfactory Academic Progress (SAP) and Last Day Attended (LDA). (Ex. 1, pp. 131-32, 137-39, 143-44).

31. Ms. Villavaso understood that identifying students on SAP warning or subject to academic dismissal was an important part of her job as the Director of Education. (Ex. 1, p. 136)

32. Ms. Villavaso acknowledged in the July 2015 Corrective Action that she had failed to track the SAP of certain students resulting in students possibly being enrolled who did not meet SAP requirements (Ex. 2 , Ex. A at p.1).

33. Officials from the Department of Education visited EMI's Metairie Campus in November 2014 to meet with EMI staff, including Ms. Villavaso, about a third-party "diploma mill" that was issuing fake diplomas that prospective students used to apply to for-profit higher education programs, including EMI programs. (Ex. 1, pp. 163-168).

34. Following the Department of Education's visit, EMI, through Dr. Montano, prepared an evolving list of "diploma mill schools" from whom proofs of graduation should not be accepted. (Ex. 1, pp. 167-68, 171-72, 175)

35. Ms. Villavaso was not aware of any issue related to fraudulent diplomas prior to the meeting between Department of Education officials and EMI staff in November 2014. (Ex. 1, p. 166).

36. Ms. Villavaso was never instructed not to do her job properly in order to allow EMI to make more money. (Ex. 1, pp. 202-03).

37. The decision to terminate Ms. Villavaso's employment had nothing to do with her alleged reporting of any type of alleged misconduct concerning EMI. (Ex. 2, ¶ 17).

38. Ms. Villavaso has no admissible evidence that a student with a "Proof of Graduation" that was confirmed to be invalid was allowed to remain enrolled at EMI.

39. Ms. Villavaso has no admissible evidence that EMI requested federal funds for a student who EMI knew had submitted a "Proof of Graduation" that was confirmed to be invalid.

40. Ms. Villavaso has no admissible evidence that EMI sought or received federal funds for any of the students identified in her Complaint as amended.

41. Ms. Villavaso has no admissible evidence that EMI requested and/or received federal funds for any student who had not actually enrolled in EMI courses.

42. Ms. Villavaso has no admissible evidence that EMI requested and/or received federal funds for any student who was not eligible to enroll in EMI courses.

43. Ms. Villavaso has no admissible evidence that EMI failed to refund federal loans it received for any students who were cancelled due to violations of Title IV or EMI requirements.

                Respectfully submitted,

                */s/ Christopher S. Mann*
                CHRISTOPHER S. MANN (#26397), T.A.
                MINIA E. GUSSMAN (#35676)
                MICHAEL A. FOLEY (#35774)
                Jones Walker LLP

> 201 St. Charles Avenue, 47th Floor
> New Orleans, Louisiana 70170
> Telephone: (504) 582-8000
> Facsimile: (504) 582-8583
> cmann@joneswalker.com
> mgussman@joneswalker.com
> mfoley@joneswalker.com
>
> AND
>
> RYAN E. JOHNSON (#26352)
> Jones Walker LLP
> Four United Plaza
> 8555 United Plaza Blvd
> Baton Rouge, LA 70809
> Telephone: (225) 248-2080
> Facsimile: (225)248-3080)
> rjohnson@joneswalker.com
>
> *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2021, I electronically filed with the foregoing document using the CM/EFC system which will send notification of such filing to all parties of record.

> */s/ Christopher S. Mann*
> Christopher S. Mann